**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LINDSEY RUSSELL REAVES,

      Defendant - Appellant.

No. 00-8026

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 99-CR-159-B)**

---

Submitted on the briefs:[*]

Maynard D. Grant of Grant & Newcomb, Seattle, Washington, for Defendant-Appellant.

David D. Freudenthal, United States Attorney, and John A. Masterson, Assistant United States Attorney, District of Wyoming, for Plaintiff-Appellee.

———————————————

Before **LUCERO** and **McKAY**, Circuit Judges, and **BROWN,**[**] Senior District Judge.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

[**]Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

_____

**McKAY**, Circuit Judge.

_____


This appeal requires us to define the scope of United States Sentencing Guideline § 2G2.1(b)(3) (1998), which increases by two a defendant's offense level for certain child pornography crimes "[i]f a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material." [1]

Defendant pleaded guilty to five counts of production of child pornography in violation of 18 U.S.C. § 2251(a); and one count each of interstate transportation, distribution, and possession, of child pornography in violation of

---

[1]We employ the November 1, 1998 Guidelines Manual because it was the version in effect on the date Defendant was sentenced. <u>See</u> U.S. Sentencing Guidelines Manual § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). We note that a new manual took effect beginning November 1, 2000. This current manual includes a revised version of § 2G2.1(b)(3), which now reads in relevant part:

> If, for the purpose of producing sexually explicit material, the offense involved . . . (B) the use of a computer or an Internet-access device to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation with a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct, increase by **2** levels.

U.S. Sentencing Guidelines Manual § 2G2.1(b)(3) (2000).

18 U.S.C. §§ 2252A(a)(1) and (b)(1), (a)(2)(B) and (b)(1), and (a)(5)(B) and (b)(2), respectively. The district court relied on § 2G2.1(b)(3) to increase by two Defendant's offense level despite Defendant's objection that the enhancement did not apply. Defendant appeals the court's decision. We have jurisdiction under 18 U.S.C. § 3742.

There is no dispute regarding the underlying facts. Defendant concedes that "he used his computer to show sexually explicit imagery to his victims both before and after their participation in sexually explicit conduct." Aplt. Br., at 43. He obtained some of these images from various internet sources. See, e.g., Aplt. App. vol. II, at 287. Moreover, Defendant expected that showing these pornographic images to his victims would entice them to engage in illicit sexual conduct with each other or with him. See, e.g., id. at 316. It is also uncontested that Defendant and one of his victims participated in at least one online chat with another pedophile where sexual topics were discussed and that Defendant had that victim listen to and then verbally record sexually explicit e-mail greetings prior to his participation in producing child pornography. See, e.g., id. at 316, 323. In short, Defendant used his computer to expose his victims to various sexual stimulants to lure them into sexual activities and pornography production. On the other hand, the government concedes that it has no evidence that Defendant

directly asked a victim to participate in child pornography via the computer, be it by e-mail or in chat rooms.    See Appellee Br., at 47.

Based on the foregoing evidence, the district court ruled that Defendant did use his computer to "solicit" the minors' participation pursuant to § 2G2.1(b)(3). The court reasoned that the computer played an integral part in a solicitation scheme presumably designed to accustom the minors to child pornography and encourage the sexual conduct depicted therein. Aplt. App. vol. I, at 270. While the court did not expressly define "solicit" for purposes of § 2G2.1(b)(3), its holding obviously rests on a relatively broad definition of that term. On appeal, Defendant argues that the court erred because "solicit" means "to directly ask or request," not "to entice, lure, or encourage" as the court implied.

We review for clear error the district court's factual findings and give due deference to the court's application of the guidelines to the facts.    See United States v. Hargus , 128 F.3d 1358, 1364 (10th Cir. 1997),    cert. denied , 523 U.S. 1079 (1998). However, we review de novo the threshold legal question of how to interpret the language of § 2G2.1(b)(3).    See id.

We interpret the Sentencing Guidelines according to accepted rules of statutory construction.    See United States v. Tagore , 158 F.3d 1124, 1128 (10th Cir. 1998) (interpreting guidelines as if they were a statute or court rule). Thus, "[w]e consider not only the bare meaning of the word ["solicit"] but also its

placement and purpose in the statutory scheme." Bailey v. United States, 516 U.S. 137, 145 (1995); see also United States v. Gay, 240 F.3d 1222, 1231 (10th Cir. 2001) ("The guidelines, as criminal statutes, are given their fair meaning in accord with the manifest intent of the lawmakers." (internal quotations omitted)), petition for cert. filed, (U.S. May 14, 2001) (No. 00-10088). While we apply the rule of strict construction to criminal statutes, and by extension to the Guidelines, that does not mean the Guidelines must be given their narrowest possible meaning. Rather, the rule of strict construction "'is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.'" United States v. Moore, 423 U.S. 122, 145 (1975) (quoting United States v. Brown, 333 U.S. 18, 25-26 (1948)). With these standards in mind, we now turn to the language of § 2G2.1(b)(3).

Standing alone, "solicit" could mean a number of things. For example, Webster's defines the term variously as: "**3:** to make petition to . . . [, especially] to approach with a request or plea"; "**4:** to move to action : serve as an urge or incentive to"; "**5:** to strongly urge"; "**6:** to entice or lead astray by or as if by specious arguments : lure on and esp. into evil"; "**9a(1):** to have an effect on (a person or thing) through some natural influence or property"; and "**10:** to serve as a temptation or lure to : ATTRACT." Webster's Third New International Dictionary 2169 (1986). The Oxford English Dictionary defines the term in

similarly varied ways: " **2.a.** To entreat or petition (a person) for, or to do, something; to urge, importune; to ask earnestly or persistently"; " **3.** To incite or move, to induce or persuade, to some act of lawlessness or insubordination"; " **4.a.** To incite, draw on, allure, by some specious representation or argument"; " **[4]b.** To court or beg the favour of (a woman), esp. with immoral intention"; " **[4]c.** To make immoral attempts upon"; and finally, " **5.** Of things: . . . **b.** To tempt, entice, allure; to attract or draw by enticement, etc." Oxford English Dictionary (2d ed. 1989) (online version, http://dictionary.oed.com); cf. Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 223 (1992) ("'Solicitation' commonly understood, means '[a]sking' for, or 'enticing' to, something." (quoting Black's Law Dictionary 1393 (6th ed. 1990)).

Unfortunately, there are no application notes for § 2G2.1(b)(3) to inform us which definition of "solicit" the Sentencing Commission intended to employ. However, the Commission's intent is nonetheless apparent once we consider the congressional directives that motivated § 2G2.1(b)(3)'s creation. The Sentencing Commission enacted § 2G2.1(b)(3) pursuant to the Sex Crimes Against Children Prevention Act of 1995 (the Act), Pub. L. No. 104-71, 1995 U.S.C.C.A.N. (109 Stat.) 774. The Act directed the Sentencing Commission to increase the base offense levels for violations of 18 U.S.C. § 2251 (production of child pornography), § 2252 (interstate transportation of child pornography), and

§ 2423(a) (transportation of minors for pornography purposes).  In addition to these general offense level increases, the Act instructed the Sentencing Commission to "increase the base offense level by at least 2 levels for an offense committed under section 2251(c)(1)(A) or 2252(a) of title 18, United States Code, <u>if a computer was used to transmit the notice or advertisement to the intended recipient or to transport or ship the visual depiction</u>."  Pub. L. No. 104-71, sec. 3, 1995 U.S.C.C.A.N. (109 Stat.) 774 (emphasis added).  The Sentencing Commission complied with this mandate by adding Sentencing Guideline § 2G2.2(b)(5) (enhancement for computer-assisted transmission of child pornography or child pornography advertisements) and Sentencing Guideline § 2G2.4(b)(3) (enhancement for computer-assisted possession of child pornography), which both became effective November 1, 1996.  <u>See</u> U.S. Sentencing Guidelines Manual app. C, amdt. 537, at 373 (1997).

In addition to these congressionally prescribed enhancements, the Commission enacted on its own initiative the guideline at issue in this case.  <u>See</u> <u>id.</u>  While Congress did not specifically instruct the Commission to enact it, Congress's concerns about computers and child pornography expressed in the Act's legislative history clearly provided the foundation upon which the Commission built § 2G2.1(b)(3).  In explaining the Act, the House Committee on the Judiciary stated:

Perhaps the most significant feature of this bill is the direction to the United States Sentencing Commission to provide for an enhancement to the base offense levels in its guidelines in cases where the offender uses a computer to traffick in child pornography, or to distribute an advertisement seeking to buy or sell child pornography. Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute. Additionally, the increasing use of computers to transmit child pornography substantially increases the likelihood that this material will be viewed by, and thus harm, children. <u>Finally, the Committee notes with particular concern the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships.</u> In light of these significant harms, it is essential that those who are caught and convicted for this conduct be punished severely.

H.R. Rep. No. 104-90, at 3-4 (1995), <u>reprinted in</u> 1995 U.S.C.C.A.N. 759, 760-61 (emphasis added). Significantly, Congress's concerns were not limited to a pedophile's ability to use a computer to directly contact increased numbers of children via the internet. Instead, Congress emphasized a broader concern with the ability to exploit a child's general fascination with computer technology. Thus, it appears Congress was not merely interested in punishing specific ways of using a computer to lure young victims. Rather, Congress wanted to punish more generally the fact that the perpetrator used a computer at all.

Turning back to the case at hand, the issue before us is, at bottom, whether the language, "if a computer was used to solicit participation," solely means "if a computer was used to <u>directly request</u> participation," or can also mean "if a

computer was used to <u>lure or entice</u> participation." Considering the varied meanings of "solicit" in light of manifest congressional intent convinces us that the latter interpretation is correct. Limiting "solicit" in § 2G2.1(b)(3) to "direct requests" via e-mail or the internet solely penalizes <u>how</u> a pedophile exploits a child's fascination with computers rather than <u>if</u> a pedophile does so—an unacceptable result given Congress's broad concerns.

Defendant's conduct in the instant case easily warrants the two-level increase for using a computer to solicit his victims' participation in sexual conduct. Defendant acquired child pornography on the internet, then showed those images to his victims on his computer in order to entice and lure the children into sexual relationships for the purpose of producing sexually explicit materials. Unfortunately, this form of solicitation is not uncommon. Congress has found that

> child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children "having fun" participating in such activity.

Child Pornography Protection Act of 1996, Pub. L. No. 104-208, Div. A, Title I, § 101(a), at § 121 subsection 1, 1996 U.S.C.C.A.N. (110 Stat.) 3009, 3009-26 <u>reprinted in</u> 18 U.S.C. § 2251 note ("Congressional Findings").

In conclusion, we note that our holding comports with the only other opinion to have addressed this issue. In <u>United States v. Brown</u>, 237 F.3d 625 (6th

-9-

Cir.), cert. denied , 69 U.S.L.W. 3729 (2001), the defendant allowed his victims access to his computer where they saw other children in sexual situations. Id. at 628. Based on those facts, the Sixth Circuit concluded that "[i]n using the computer to desensitize his victims to deviant sexual activity, he was using it to solicit participation in that activity. This use of the computer fits well within the conduct that was contemplated by Congress, as well as within the wording of U.S.S.G. § 2G2.1(b)(3)." Id. at 629.

We **AFFIRM** the district court.