**UNITED STATES of America,
Appellee,**

v.

**Faisal ZAFAR, Defendant–Appellant.**

No. 07–4345–cr.

United States Court of Appeals,
Second Circuit.

Sept. 4, 2008.

Martin G. Goldberg, Franklin Square, NY, for Appellant.

Martin E. Coffey, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, of counsel), for Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

PRESENT: Hon. REENA RAGGI, Hon. RICHARD C. WESLEY and Hon. DEBRA A. LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Defendant Faisal Zafar was convicted after jury trial of one conspiracy count and fifteen substantive counts of securities fraud. *See* 18 U.S.C. §§ 1348, 1349. Sentenced to concurrent terms of 57 months' incarceration, five years of supervised release, $85,082.09 in restitution, and a $1,600 special assessment, Zafar challenges his conviction on grounds that the district court erred (1) at trial in limiting the testimony of defendant's computer expert, and (2) at sentence in (a) applying a two-level enhancement to Zafar's Guidelines calculation for "mass-marketing" pursuant to U.S.S.G. § 2B1.1(b)(2)(A), (b) calculating loss pursuant to U.S.S.G. § 2B1.1(b)(1) by reference to defendant's trading gains, and (c) awarding restitution

pursuant to 18 U.S.C. § 3663A(a)(1) without consideration of victims' contributory negligence. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

### 1. Trial Error

■ To the extent Zafar submits that the district court erred in limiting the testimony of his computer expert, Patrick O'Leary, he carries a heavy burden because, in this area, we accord trial judges considerable deference, and we will not reverse their rulings absent abuse of discretion. See United States v. Thompson, 528 F.3d 110, 120 (2d Cir.2008); United States v. Lombardozzi, 491 F.3d 61, 77 (2d Cir.2007) (holding that rulings regarding expert testimony will be set aside only if "manifestly erroneous"). We identify no such abuse in this case.

The district court precluded O'Leary from testifying about his ability to access Zafar's computer network from outside his home because no evidence was adduced showing that the configuration of the network accessed by O'Leary was identical to the one Zafar used at the time of the charged crimes. The district court's conclusion that, without that "critical missing link," O'Leary's testimony was irrelevant fell well within its discretion. See Fed. R.Evid. 403; see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (noting that, in conducting Rule 403 assessment, trial judge "exercises more control over experts than over lay witnesses" (citation and internal quotation marks omitted)).[1]

Similarly, the district court reasonably precluded O'Leary from demonstrating how certain stock-selection software worked in the absence of evidence indicating that defendant had, in fact, used the software for stock trading at the time of the charged crimes. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 595, 113 S.Ct. 2786. The mere presence of the software on Zafar's computer and defendant's post-arrest acknowledgment of general use did not compel a different conclusion. As the district court observed, defense counsel's own proffer of this evidence indicated that its purpose was not to show the jury how the software worked but to insinuate what had happened with respect to the relevant stock trades, a subject on which O'Leary was not a competent witness.

Accordingly, we conclude that no trial error warrants reversal of Zafar's conviction.

### 2. Sentencing Error

In the aftermath of United States v. Booker, we review sentences for "reasonableness," 543 U.S. 220, 262, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "a deferential standard limited to identifying abuse of discretion," which proceeds in two steps: procedural and substantive. United States v. Jones, 531 F.3d 163, 170 (2d Cir.2008) (citing Gall v. United States, —— U.S. ——, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007)). On this appeal, our focus is procedural because Zafar claims that the district court erred in calculating his Guidelines sentencing range and statutory restitution obligation. See Gall v. United States, 128 S.Ct. at 597; United States v. Guang, 511 F.3d 110, 126 (2d Cir.2007). We review the district court's factual findings on these

---

**1.** Not insignificantly, the district court did allow O'Leary to offer a more general expert opinion that did not require this link, i.e., O'Leary testified, in general, to how access to another person's computer might be obtained from a remote location, thereby casting doubt on the government's theory that Zafar was responsible for market misinformation on the internet traceable to his computer.

matters for clear error and its interpretations of law, including the Guidelines, *de novo*. *See United States v. Fuller*, 426 F.3d 556, 562 (2d Cir.2005).

### a. *Mass–Marketing Enhancement*

■■■ Zafar submits that the district court erred in employing a "mass-marketing" enhancement in calculating his Guidelines, *see* U.S.S.G. § 2B1.1(b)(2)(A), because his internet activities did not amount to "solicitation," *id.* cmt. 4(A) (defining mass-marketing as "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (i) purchase goods or services; (ii) participate in a contest or sweepstakes; or (iii) invest for financial profit"). Zafar asserts that to engage in solicitation a defendant must offer to sell something himself. This construction is flawed in several respects.

First, as the quoted commentary indicates, solicitations can reach beyond proffered sales to include inducements to participate in contests, sweepstakes, or financial investments. Even as to sales, nothing in the commentary requires the solicitor himself to be the seller of the proffered good or service for his pitch to constitute a solicitation.

Second, the common meaning of the word "solicit" is not limited to sales. Nor does it require that the solicitor be importuning something for himself directly. Rather, the word sweeps broadly to reach any conduct that petitions, urges, entices, or moves another to action, *see* Black's Law Dictionary 1427 (8th ed.1999); Webster's Third International Dictionary Unabridged 2169 (3d ed.1986). *See generally United States v. Reaves*, 253 F.3d 1201, 1204 (10th Cir.2001) (noting broad common meaning of solicit in declining to construe the term narrowly in U.S.S.G. § 2G2.1(b)(3) (addressing use of computer to "solicit" minor's participation in sexually explicit conduct)).

Third, defendant's conduct comfortably fits within this broad definition of solicitation because his internet messages did more than report materially false information about the stocks he schemed to pump and dump. One message specifically urged readers to "buy buy buy" the touted stock.

Fourth, the fact that Zafar was urging the purchase of touted stock in the open market rather than offering it for sale himself does not absolve him of solicitation. Indeed, the "pump" component of his fraud scheme depended on Zafar's ability to induce a large number of persons to invest in particular publicly traded stocks. Fraud is, after all, a crime of extraordinary variety. *See United States v. Altman*, 48 F.3d 96, 101–02 (2d Cir.1995). Thus, in focusing on "mass-marketing" as an aggravating factor for fraud, there is no reason for us to construe "solicitation" narrowly to apply to a defendant's efforts to induce a large number of persons to purchase from him directly but not to his efforts to induce a large number of persons to make market purchases from which the defendant may unlawfully profit.

Finally, the broad construction employed by the district court is consistent with U.S.S.G. § 2B1.1(b)(2)(A), which references "mass-marketing" to indicate that, even when the exact number of fraud victims—the Guideline's primary concern—cannot be determined with certainty, evidence of marketing to a large number of potential victims is properly viewed as an aggravating factor in assessing the seriousness of the charged fraud. Consistent with this purpose, the district court correctly concluded that defendant's use of the internet to reach countless persons with materially misleading information about stocks that he then urged them to

"buy buy buy" constituted mass-marketing.

Accordingly, we identify no procedural error in this aspect of the district court's Guidelines calculation.

### b. *Loss Calculation*

■ Nor do we identify procedural error in the district court's reliance on evidence of the gains realized by Zafar and a confederate in order to calculate loss pursuant to U.S.S.G. § 2B1.1, a factor that serves, in part, to identify the seriousness of a particular fraud. Mindful that loss cannot always be decided precisely and that a district court need only make a reasonable estimate of this Guidelines factor, *see United States v. Ebbers*, 458 F.3d 110, 126 (2d Cir.2006), the commentary to § 2B1.1 specifically approves the use of a defendant's gains as an alternate measure of loss, albeit "only if there is a loss but it reasonably cannot be determined." See U.S.S.G. § 2B1.1, cmt. 3(B).

Zafar submits that loss could have been determined in his case by looking to the injuries sustained by three individuals who, in response to a government mass mailing, identified themselves as victims of the charged scheme. The district court did not clearly err in concluding that these injuries failed accurately to reflect the true loss caused by defendant given "all manner of reasons" why victims might not have come forward in response to the government mailing.

To the extent Zafar cites *United States v. Rutkoske*, 506 F.3d 170, 179 (2d Cir. 2007), a case decided after his sentencing, to fault the district court for not considering whether factors other than the charged fraud might have contributed to victims' losses, we note that *Rutkoske's* reasoning applies to loss calculations based on actual victim losses, not to cases such as this one where loss cannot be determined and a

court is compelled to look to defendant's gains to make a § 2B1.1 determination.

In any event, we can confidently conclude that Zafar was not prejudiced by the district court's use of gains to calculate loss because, as the district court noted, the estimated $900,000 gain placed Zafar at the very top end of the $400,000 to $1,000,000 range specified in U.S.S.G. § 2B1.1(b)(1)(H). Thus, even if this gains calculation was off the loss mark by as much as 50 percent, this would make no difference to Zafar's Guidelines calculation. Hence, we identify no procedural error.

### c. *Restitution*

■ Zafar asserts that the district court erred in requiring him to make full restitution to victims without considering whether their own negligence contributed to their losses. Specifically, he points to one victim who, as the result of a negligent keystroke in a computer trade, purchased 54,000 shares of the fraudulently manipulated stock when he had intended to purchase only 5,400 shares. The argument merits little discussion.

The plain language of the Restitution Act mandates restitution in cases involving securities fraud, *see* 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Dupes*, 513 F.3d 338, 345 (2d Cir.2008), "to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The Act defines a "victim" as a "person directly and proximately harmed as a result of" the offense. *Id.* § 3663A(a)(2). Nothing in the detailed provisions of the statute contemplates that a defendant guilty of criminal fraud can escape mandatory restitution by requiring district courts to conduct mini-trials on the possible contributory negligence of the very persons victimized by the defendant.

Accordingly, the judgment of conviction is AFFIRMED in all respects.