Hillsborough-southern judicial district
No. 2008-289

### THE STATE OF NEW HAMPSHIRE

v.

### JEREMY JENNINGS

Submitted: February 19, 2009
Opinion Issued: June 12, 2009

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief, for the defendant.

BRODERICK, C.J. The defendant, Jeremy Jennings, appeals his conviction, following a jury trial in the Superior Court (*Groff*, J.), on one count of prohibited uses of computer services, *see* RSA 649-B:4 (2007) (amended 2008). We affirm.

The record supports the following. The defendant and his wife have three children and were divorced in 2000. The wife received physical custody of the children under the divorce decree, but the children were allowed to visit the defendant every other weekend at his residence.

In 2005, the defendant's eldest daughter, then fifteen years old, told two friends that her father had been touching her inappropriately. One of the friends later expressed her concern for the daughter's safety to her high school guidance counselor. After speaking with the daughter, the guidance counselor spoke to the child's mother before contacting the Milford Police Department. A detective from the department subsequently went to the defendant's home and found both a desktop and a laptop computer.

The defendant was tried on several charges, including three counts of prohibited uses of computer services. At trial, the daughter testified that on one occasion when she was visiting the defendant, he accessed at least one pornographic video via a website on the internet and showed her the video on his computer screen. The defendant does not contend otherwise. She

also testified that while she was watching the video on his computer, he digitally penetrated her vagina. After the close of evidence, the trial court dismissed two of the three prohibited uses of computer services indictments. The jury found the defendant guilty on the remaining charge. This appeal followed.

The defendant's sole argument on appeal is that the State introduced insufficient evidence to support his conviction for prohibited uses of computer services. This case requires that we construe RSA 649-B:4. "We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. We begin by examining the language of the statute, and ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. We also interpret a statute in the context of the overall statutory scheme and not in isolation. . . . Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *State v. Lamy*, 158 N.H. 511, 515 (2009) (citations omitted). "We construe Criminal Code provisions according to the fair import of their terms and to promote justice. We review the trial court's interpretation of a statute *de novo*." *State v. Hudson*, 151 N.H. 688, 690 (2005) (quotations and citations omitted); *see* RSA 625:3 (2007).

RSA 649-B:4 provides, in pertinent part:

> Any person who knowingly utilizes a computer on-line service, Internet service, or local bulletin board service to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any of the following is guilty of a class B felony:
>
> I. Any offense under RSA 632-A, relative to sexual assault and related offenses.

The defendant contends that the "trial court erred [in not dismissing the charge of prohibited uses of a computer], because [he] did not utilize a computer on-line service, internet service or bulletin board service . . . [to] communicate with [his daughter] over the internet. He did not send her a message, an image or anything else over the internet, nor did she communicate with him." He argues that because there was no evidence that "either [he] or [his daughter] sent any communication or information over the internet to each other, [he] did not utilize the internet." We disagree with the defendant's argument that the statutory phrase "utilizes a computer on-line service, Internet service, or local bulletin board" must be

construed as applying only when a person *communicates* with another, specifically a child, via the on-line service, internet service, or local bulletin board.

■ Our analysis begins with an examination of the statutory language, ascribing the plain and ordinary meaning to the words used. At issue initially is the statutory term "utilizes," which is not defined in the statute. We have not had prior cause to define this term within the context of RSA 649-B:4, and we need not determine a specific definition here. Instead, we note that the plain and ordinary meaning of "utilize" includes "to make useful: turn to profitable account or use: make use of," and includes "use" as a synonym, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2525 (unabridged ed. 2002). The pertinent and synonymous definition of "use" includes "to carry out a purpose or action by means of: make instrumental to an end or process . . . UTILIZE." *Id.* at 2524. Nowhere in the plain and ordinary meaning do we detect any requirement that necessarily entails communicating with another person. Further, to accept the defendant's construction would require that we consider what the legislature might have said or add language to the statute that the legislature did not see fit to include — specifically, knowingly utilizes a computer on-line service, internet service, or local bulletin board service *to communicate with a child in order* to seduce, solicit, lure, or entice a child. We decline to do either. *See Lamy*, 158 N.H. at 515.

The defendant acknowledges that "[c]ertain actions, such as . . . communicating with a minor over the internet, through email or an on-line messaging service, clearly fall under the statute." He contends, however, that the statutory phrase "knowingly utilizes a computer on-line service, Internet service, or local bulletin board service" is ambiguous, and reiterates that he "never communicated with [his daughter] over the internet." Based upon our earlier plain meaning analysis, we fail to see ambiguity. Given the mandate of RSA 625:3, however, we look to the statute's infinitive phrase, "to seduce, solicit, lure, or entice," and its direct object, "a child," to further our statutory analysis.

We acknowledge that it may be reasonable to read at least one of the terms in the statute's infinitive phrase as tending to include a form of written or verbal communication between two individuals. Specifically, the plain and ordinary meaning of the transitive verb "solicit" includes the following: "to make petition to: ENTREAT . . . to approach with a request or plea . . . to move to action: serve as an urge or incentive to . . . to strongly urge . . . insist upon . . . to entice or lead astray by or as if by specious arguments: lure on and esp[ecially] into evil . . . to endeavor to obtain by asking or pleading: plead for . . . to seek eagerly or actively . . . to have an

effect on (a person or thing) through some natural influence or property . . . to seek to affect . . . to serve as a temptation or lure to: ATTRACT." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 2169. "When the statutory language is subject to more than one reasonable interpretation, we examine the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Hull*, 149 N.H. 706, 709 (2003). We begin by looking at the legislative history of the statute to determine the legislature's intent. *State v. Rollins-Ercolino*, 149 N.H. 336, 339 (2003).

▮ Although the legislative history of the statute is relatively sparse, we believe it supports a broader construction than that argued by the defendant. In addition to the legislative history recited by the defendant, we note that RSA chapter 649-B is known as the "Computer Pornography and Child Exploitation Prevention Act of 1998," *see* RSA 649-B:1 (2007). The "amended analysis" of House Bill 1561-FN indicates that its purpose was to "establish[] penalties for child pornography, exploitation, and abuse offenses committed by means of computer," N.H.H.R. JOUR. 430 (1998), and to "prevent[] computer pornography and child exploitation," *id.* at 428. Representative Cardin, speaking for the House Committee on Criminal Justice and Public Safety, detailed that:

> This bill, as amended, establishes penalties for child pornography and exploitation committed by means of computer. This strengthens the state's child pornography laws to include online crimes. This technology is a new challenge for law enforcement who need new laws to help with those challenges.

*Id.* at 428-29. We see nothing in this history to support an argument that the legislature intended to limit the scope of RSA 649-B:4 only to forms of written or verbal communication between a defendant and a child accomplished via a computer on-line service, an internet service, or a local bulletin board service. "[T]o read such a limit into the statute would undermine its very purpose." *State v. Jennings*, 155 N.H. 768, 777 (2007) (construing RSA 632-A:2). Instead, we believe that the legislative history acknowledges the new technology presented by the computer, the expanse of possibilities presented by the internet, and the need for new and broader statutes to assist law enforcement in the protection of children from the types of dangers presented by the same.

We note that this broad construction of the statute is in consonance with related federal cases. In *United States v. Brown*, 237 F.3d 625 (6th Cir.), *cert. denied*, 532 U.S. 1030 (2001), the defendant appealed from his sentence for producing and possessing child pornography. He received a two-level increase in his sentence under the United States Sentencing

Guidelines "because a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually-explicit material." *Brown*, 237 F.3d at 626. The defendant contended that, due to its language, the computer sentencing adjustment did not apply because "[he] did not use [the computer] to solicit participation, in that he did not, via the computer, specifically ask minors to engage in sexually-explicit conduct." *Id.* at 628. In affirming the defendant's sentence enhancement and determining that the language of the sentencing guidelines was not as limited as argued by the defendant, the appellate court looked to the legislative history of the sentence enhancements and the Sex Crimes Against Children Prevention Act of 1995. *Id.* That legislative history detailed that "the Committee notes with particular concern the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships." *Id.* at 629 (quotation and italics omitted). The Sixth Circuit Court of Appeals concluded that, "In using the computer to desensitize his victims to deviant sexual activity, he was using it to solicit participation in that activity." *Id.*

Similarly, in *United States v. Reaves*, 253 F.3d 1201 (10th Cir. 2001), the appellate court affirmed the defendant's enhanced sentence for child pornography crimes under the same sentencing guidelines. The appellate court noted the defendant had conceded that:

> [H]e used his computer to show sexually explicit imagery to his victims both before and after their participation in sexually explicit conduct. He obtained some of these images from various internet sources. Moreover, Defendant expected that showing these pornographic images to his victims would entice them to engage in illicit sexual conduct with each other or with him. . . . In short, Defendant used his computer to expose his victims to various sexual stimulants to lure them into sexual activities and pornography production.

*Reaves*, 253 F.3d at 1203 (quotation and citations omitted). The federal district court had ruled that the defendant "did use his computer to 'solicit' the minors' participation," reasoning that "the computer played an integral part in a solicitation scheme presumably designed to accustom the minor to child pornography and encourage the sexual conduct depicted therein." *Id.*

On appeal, the defendant argued that the district court had erred "because 'solicit' means 'to directly ask or request,' not 'to entice, lure, or encourage.' " *Id.* In affirming the defendant's sentence enhancement and rejecting his narrow definition of "solicit," the Tenth Circuit Court of Appeals looked to the same legislative history as in *United States v. Brown*, and noted:

Significantly, Congress's concerns were not limited to a pedophile's ability to use a computer to directly contact increased numbers of children via the internet. Instead, Congress emphasized a broader concern with the ability to exploit a child's general fascination with computer technology. Thus, it appears Congress was not merely interested in punishing specific ways of using a computer to lure young victims. Rather, Congress wanted to punish more generally the fact that the perpetrator used a computer at all.

*Id.* at 1205. The court concluded:

Limiting "solicit" in [the sentencing guidelines] to "direct requests" via email or the internet solely penalizes *how* a pedophile exploits a child's fascination with computers rather than *if* a pedophile does so — an unacceptable result given Congress's broad concerns.

. . . Defendant acquired child pornography on the internet, then showed these images to his victims on his computer in order to entice and lure the children into sexual relationships . . . .

Unfortunately, this form of solicitation is not uncommon.

*Id.*

Furthermore, RSA 639:3, III (2007) ("Endangering Welfare of Child or Incompetent") provides, in pertinent part:

In the prosecution of any person under this section, the solicitation by any person of a child under the age of 16 . . . to engage in sexual penetration as defined by RSA 632-A:1, V, constitutes endangering the welfare of such child.

In that statutory paragraph, effective August 23, 1983, *see* Laws 1983, 448:1, the legislature chose to limit the statutory prohibition to any person's "solicitation" of a child. As noted above, we acknowledge that it may be reasonable to read "solicit" as tending to include a form of written or verbal communication between two persons. Fifteen years later, *see* Laws 1998, 361:3, the legislature addressed the need for new statutes to target the expanding challenges presented by the powerful new technologies of computers and the internet. At that time, the legislature chose not to *limit* RSA 649-B:4 to a proscription against utilizing a computer on-line service,

internet service, or local bulletin board service to solicit a child, but to *expand* the statutory proscription to include utilizing those entities to seduce, lure, or entice a child.

■ Indeed, in structuring the framework of RSA 649-B:4, the legislature chose to include, in RSA 649-B:4, III, the proscription of RSA 639:3, III against the solicitation of a child under the age of sixteen to engage in sexual penetration. We believe that the legislature's inclusion of the additional terms "seduce . . . lure, or entice" indicates a clear legislative intent to expand the statutory proscription. *See, e.g., State v. Yates*, 152 N.H. 245, 256 (2005) ("The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect.").

■ Given the plain and ordinary meanings of the transitive verbs "lure" and "entice," for example, we do not see the same requisite for a form of written or verbal communication between two persons that might reasonably be read into "solicit." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1347 (plain and ordinary meaning of "lure" includes: "to tempt with a promise of pleasure or gain: ALLURE, ATTRACT, ENTICE, INVITE"), 757 (plain and ordinary meaning of "entice" includes: "to draw on by arousing hope or desire: ALLURE, ATTRACT . . . to draw into evil ways: lead astray: TEMPT"). Consequently, we read the proscription of RSA 649-B:4 broadly, especially in light of the statutory scheme's overarching policy of preventing computer pornography, child exploitation, and abuse offenses committed by means of a computer.

■ Given the plain and ordinary meanings of the statutory terms, our examination of the legislative history and associated statutes, and the purpose and policy behind the statute, we believe that the defendant's actions of accessing a website on the internet to show his daughter a pornographic video on his computer, and digitally penetrating her vagina while she was watching the video, clearly fall within the scope of RSA 649-B:4's prohibition of "utiliz[ing] a computer on-line service, [or] Internet service . . . to seduce, solicit, lure, or entice, a child."

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.