Hillsborough-northern judicial district
No. 2009-624

THE STATE OF NEW HAMPSHIRE

v.

TIMOTHY SPADE

Argued: June 15, 2010
Opinion Issued: November 30, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The State appeals an order of the Superior Court (*Abramson*, J.) dismissing indictments against the defendant, Timothy Spade, that charged him with several counts of aggravated assault under RSA 642:9, II (2007). We reverse and remand.

The facts, briefly stated, are drawn from the trial court's order or otherwise are not in dispute. As an inmate at the Hillsborough County House of Correction, the defendant was indicted on six counts of aggravated assault by an inmate on a corrections staff member in violation of

RSA 642:9, II. Three indictments alleged that, while held in official custody and with the intent to harass a person he knew to be an employee of the department of corrections, the defendant purposely caused or attempted to cause such employee "to come into contact with feces by throwing such material saturated onto the floor thereby causing [such employee] to clean it up." Two other indictments alleged that, while held in official custody and with the intent to harass a person he knew to be an employee of the department of corrections, the defendant purposely caused or attempted to cause such employee "to come into contact with urine by expelling such material onto the floor thereby causing [such employee] to clean it up."

The sixth indictment alleged that, while held in official custody and with the intent to harass a person he knew to be an employee of the department of corrections, the defendant purposely caused or attempted to cause such employee "to come into contact with feces by throwing such material underneath his cell door and onto the floor thereby causing [such employee] to clean it up." The indictments involved various dates and various corrections employees.

The defendant moved to dismiss the indictments, arguing, in part, that the facts alleged were not sufficient to prove a violation of RSA 642:9, II because the indictments failed to allege that he had thrown or expelled feces or urine at a corrections officer. According to the defendant, the statute reaches conduct involving an inmate throwing or expelling certain bodily fluids and materials at a corrections officer, but not conduct resulting in employees cleaning up such substance. The State objected, contending that, by its plain meaning, the statute prohibits inmates from intentionally harassing corrections officers by causing or attempting to cause such an officer to come in contact with certain bodily fluids and materials.

The trial court agreed with the defendant's interpretation of the statute and dismissed the indictments. In so doing, it reasoned that the statutory phrase "come in contact with" was ambiguous as to the nature of contact required in order to charge a person under RSA 642:9, II: "There are a number of potential methods of cleaning up the bodily substances . . . and not all of them would amount to 'contact' under the 'plain and ordinary meaning' ascribed by the State to that word. Exactly which methods, if any, constitute 'contact' is unclear." After reviewing the legislative history, the trial court concluded that the nature of the contact prohibited in RSA 642:9, II addresses

> the problem of bodily fluids being thrown on or at DOC personnel, and the risk of disease associated with such actions. The threat posed by such conduct is obvious: DOC employees have no way to avoid the potential harm or to minimize the threat of disease posed by these substances when the substances are thrown or

otherwise directed at or on the employees. By contrast, the indictments in this case allege that the defendant put feces and/or urine on the floor, and that DOC employees had to clean it up. There is nothing in the legislative history to support the claim that this kind of situation, in which the employees can take steps to minimize the risk of contracting diseases by using safe methods to clean the mess, was intended to be penalized under RSA 642:9, II as a Class B felony offense. . . . While such conduct is reprehensible, [it] is subject to punishment within the prison system, and may constitute some other offense, see, e.g., RSA 634:2 (2007), it is not an aggravated assault on a corrections staff member under RSA 642:9, II.

The State appealed.

Resolution of this appeal requires statutory interpretation, which is a question of law that we review *de novo. State v. Kousounadis*, 159 N.H. 413, 423 (2009). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *State v. Lamy*, 158 N.H. 511, 515 (2009). We first examine the language of the statute, and, if possible, ascribe the plain and ordinary meaning to the words used. *Kousounadis*, 159 N.H. at 423. We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. *Lamy*, 158 N.H. at 515. We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* If a statute is ambiguous, however, we consider legislative history to aid our analysis. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* Finally, we construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *See* RSA 625:3 (2007).

The State argues that the statute prohibits any conduct in which an inmate causes or attempts to cause a corrections employee to come in contact with certain bodily substances by throwing or expelling any such substance with an intent to harass, threaten, or alarm, and that the trial court erred in inserting into the statute the extra requirement that the substance be thrown or expelled at an employee. The State contends that the legislative history does not compel a different construction of the statute. The defendant counters that the statute is susceptible to multiple meanings: "On the one hand, the language could mean only the type of conduct that arises when the prohibited materials are directed toward an officer or, in other words, where the inmate's act of throwing or expelling the material was the direct means of causing contact. . . . On the other hand,

the statute could be read to include any form of contact by any means, no matter how indirect or remote from an inmate's act of throwing or expelling the material." He argues that the legislative history shows that "the legislature intended to proscribe only the type of contact that might occur when an inmate throws or expels the prohibited material at a corrections officer."

Turning to the statute, RSA 642:9, II provides:

> An inmate is guilty of aggravated assault on a corrections staff member when, with intent to harass, threaten, or alarm a person whom the inmate knows or reasonably should know to be an employee of such facility, or an employee of the department of corrections, or an employee of any law enforcement agency, the inmate causes or attempts to cause such employee to come in contact with blood, seminal fluid, urine, or feces by throwing or expelling such fluid or material.

Violation of this provision is a class B felony. RSA 642:9, IV.

■ The statute prohibits an inmate from causing or attempting to cause a corrections department or law enforcement employee "to come in contact with" certain bodily substances "by throwing or expelling such fluid or material," when the inmate does so with the intent to harass, threaten or alarm. The statutory phrase "by throwing or expelling such fluid or material" anticipates that the inmate either throw or expel the bodily substance as the means of causing or attempting to cause the employee to "come in contact with" the substance thrown or expelled. Definitions of "contact" include "a union or junction of body surfaces: a touching or meeting," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 490 (unabridged ed. 2002), and "[a] coming together or touching, as of objects or surfaces," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 395 (4th ed. 2006). *See State v. Kelley*, 153 N.H. 481, 483 (2006) (court consulted dictionary for guidance when considering the plain meaning of statutory terms).

■ We disagree with the trial court's reading of the statute. The phrase "to come in contact with" is not ambiguous as to the nature of the contact, or the method of causing or attempting to cause contact, that is prohibited by the statute. Rather, the statute's plain language makes clear that the legislature intended the statute to apply whenever an inmate, with the requisite intent, throws or expels one of the enumerated bodily substances, causing or attempting to cause a corrections department or law enforcement employee "to come in contact with" that substance. Nothing in the statute's plain language requires the inmate to throw or expel such

substance at an employee who is physically present. To read the statute in this manner would require adding words that the legislature did not see fit to include, *e.g.*, "by throwing or expelling such fluid or material [at an employee]." Had the legislature intended to limit the statute in this way, it could have done so. *Cf., e.g.*, Ky. Rev. Stat. Ann. § 508.025(l)(b) (LexisNexis 2008) ("throws or causes feces or urine, or other bodily fluid to be thrown upon an employee"); S.C. Code Ann. § 24-13-470(A) (2007) ("attempts to throw or throws body fluids . . . on an employee of a . . . correctional facility").

Our construction of RSA 642:9, II is in keeping with the "Assaults by Prisoners" statute read as a whole, RSA 642:9, as well as the other assault provisions in the Criminal Code, RSA 631:1-:2-a (2007). The Assaults by Prisoners statute is included in the "Obstructing Government Operations" chapter, RSA chapter 642, of the Criminal Code and elevates the crime of assault under RSA chapter 631 when committed by a person held in official custody, RSA 642:9, I, IV. For example, a misdemeanor simple assault, RSA 631:2-a, is elevated to a class B felony, RSA 642:9, IV. *See also* RSA 642:9, V (any term of imprisonment for assault under RSA 642:9 must run consecutive to, and not concurrent with, any other sentence to be served). The Assaults by Prisoners statute also identifies a distinct category of aggravated assault that is committed by an inmate on a corrections staff member under RSA 642:9, II, the provision at issue in this case.

▮ Notably, the proscription under RSA 642:9, II differs from the statutory language proscribing assaults under RSA 631:1 to :2-a. For example, the simple assault provision expressly prohibits a person from purposely or knowingly causing "bodily injury" or "unprivileged physical contact." RSA 631:2-a; *see also* RSA 631:1 ("serious bodily injury" or "bodily injury"); RSA 631:2 (same). However, the language of RSA 642:9, II differs in that inmates are prohibited from, with the prescribed intent, causing or attempting to cause an employee "to come in contact with" an enumerated bodily substance by throwing or expelling such substance. The language "to come in contact with" adopted by the legislature applies more broadly than does the language in the assault provisions under RSA chapter 631. Moreover, the aggravated assault provision under RSA 642:9, II targets an inmate's "intent to harass, threaten, or alarm" an employee by causing or attempting to cause that employee to come in contact with an enumerated bodily substance, rather than solely targeting conduct that purposely, knowingly or recklessly causes bodily injury or unprivileged physical contact. Therefore, we conclude that the language of RSA 642:9, II, as compared to that of the assault provisions under RSA chapter 631, evinces a legislative intent to proscribe a broader range of conduct than just

throwing or expelling an enumerated bodily substance at an employee in order to harass, threaten, or alarm that person.

Further, prior to the enactment of RSA 642:9, II, an inmate's action of throwing or expelling a bodily substance *at* a corrections staff member already was chargeable as, at least, a class B felony. *See* RSA 642:9, I, IV (assault by person held in official custody is a class B felony "if the offense committed is simple assault as defined under RSA 631:2-a."). Thus, RSA 642:9, II would be redundant if it did not prohibit a broader range of conduct. *See* RSA 642:9, IV (both aggravated assault under RSA 642:9, II and simple assault under RSA 631:2-a are class B felonies); *In re Search Warrant (Med. Records of C.T.)*, 160 N.H. 214, 221 (2010) (court presumes that legislature does not enact redundant, unnecessary, or duplicative provisions).

We note that a New York court upheld a conviction under an aggravated harassment statute that is similar to aggravated assault under RSA 642:9, II, in which the evidence demonstrated that the inmate "defecated in his cell and threw the feces on the walls, door, floors and ceiling of the cell block area" and that "police officers on duty were unable to avoid contact with the feces in their efforts to clean the cell block area." *People v. Pysadee*, 767 N.Y.S.2d 544, 545 (App. Div. 2003); *see* N.Y. Penal Law § 240.32 (McKinney 2008). While that court did not conduct a statutory analysis of the scope of the aggravated harassment statute, its decision that the evidence was legally sufficient to support a conviction under that statute is nevertheless instructive. *Cf. People v. Polanco*, 770 N.Y.S.2d 167, 168-69 (App. Div. 2003) (an indictment alleging that an inmate expelled bodily fluid into an envelope, then sent it to a corrections employee did not charge a crime under aggravated harassment statute because the inmate's act of mailing the envelope, rather than the expulsion of the fluid itself, was the charged means of attempted contact).

█ Even if we were to assume that the statute is reasonably susceptible to interpretations that favor both the defendant and the State, *see DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793, 797-98 (2006), we would conclude that the legislative history supports a broader proscription. This history demonstrates that the primary purposes for the enactment of RSA 642:9, II were threefold: (1) protecting corrections employees from exposure to disease through coming in contact with certain bodily fluids or materials; (2) promoting respect and dignity for corrections staff by protecting them from humiliation and degradation caused by inmates using bodily waste to harass them; (3) ensuring that inmates who repeatedly misbehave toward corrections employees by throwing or expelling bodily substances, but who already have had their existing prison terms extended

to the maximum, could be subject to criminal punishment as a deterrent. *See* HOUSE CRIMINAL JUSTICE AND PUBL. SAFETY COMM. MINUTES, H.B. 1382 (Feb. 2, 2000) (reprinted in State's Appendix at 32-34); SENATE COMM. ON EXECUTIVE DEP'TS & ADMIN., H'RG ON H.B. 1382 (April 18, 2000) (reprinted in State's Appendix at 39-44); N.H.S. JOUR. 637 (2000).

The prime sponsor of the House Bill stated that the proposed legislation "makes it a crime for someone to intentionally through [*sic*] something at a corrections officer thereby exposing him to some severe disease and so forth." SENATE COMM. ON EXECUTIVE DEP'TS & ADMIN., *supra* (statement of William V. Knowles). Testimony during a House committee hearing identifies instances in which inmates spat at, or threw feces and urine at, corrections staff. HOUSE CRIMINAL JUSTICE AND PUBL. SAFETY COMM. MINUTES, *supra*. However, nothing in the legislative history demonstrates that the proposed legislation was intended to apply only to contact with an enumerated substance brought about by an inmate throwing or expelling it at an employee. Certainly, exposure to disease can arise whenever inmates cause or attempt to cause corrections department or law enforcement employees "to come in contact with" enumerated bodily substances by throwing or expelling it, whether or not the substance was thrown or expelled at the employee.

We further observe that the title of the legislation itself, described as an act "making it a felony for inmates to harass corrections personnel and others by propelling bodily fluids," reveals an intent to punish inmates who harass corrections department and law enforcement employees. *See* N.H.H.R. JOUR. 274 (2000) (H.B. 1382-FN); N.H.S. JOUR. 637 (2000) (same). Indeed, the prescribed *mens rea* includes "intent to harass, threaten or alarm." RSA 642:9, II. Our construction of the statute accords with the legislative intent to protect corrections staff from harassment, whether or not the bodily substance is thrown or expelled at an employee who is physically present. Moreover, construing the statute as prescribing an additional category of assault, thereby criminalizing conduct not already captured under RSA chapter 631, ensures that inmates who have already had their prison terms extended to the maximum may be deterred from engaging in the identified harassing behavior toward corrections staff on a repeated basis. *See* N.H.S. JOUR. 637 (2000) (Senator Francoeur testifying that "most inmates that resort to this behavior are serving maximum time, and there isn't a sufficient deterrent for this behavior").

In sum, according to the plain language of RSA 642:9, II, we hold that to be guilty of aggravated assault, the inmate must have thrown or expelled an enumerated bodily substance, causing or attempting to cause the employee to come in contact with such substance, with the intent to harass,

threaten or alarm. This reading of the statute comports with the fair import of its terms and promotes justice. Because we conclude that the statutory language is clear on its face, we do not consider the defendant's argument regarding the rule of lenity. *Cf. State v. Dansereau*, 157 N.H. 596, 603 (2008) (applying rule of lenity to resolve statutory ambiguity in favor of defendant because "neither the [statutory] language nor the legislative history [of the statute] clearly establish what the legislature intended").

Here, the indictments against the defendant all allege that, with the intent to harass a person he knew to be a corrections employee, the defendant purposely caused or attempted to cause the employee to come into contact with feces or urine by throwing or expelling such material onto the floor, or underneath his cell door and onto the floor, causing the employee to clean it up. While the State may bear a more difficult burden to establish an inmate's criminal intent beyond a reasonable doubt when an inmate is not charged with throwing or expelling the bodily substance at an employee, the conduct charged in the indictments before us falls within the scope of RSA 642:9, II Accordingly, we reverse the trial court's dismissal of the indictments and remand.

*Reversed and remanded.*

DALIANIS and HICKS, JJ., concurred; DUGGAN, J., with whom CONBOY, J., joined, dissented.

DUGGAN, J. dissenting. The plain meaning of RSA 642:9, II (2007) does not readily resolve whether merely causing a department of corrections employee to clean up a defendant's bodily fluids is sufficient to satisfy the "contact" element of the statute. A review of the statute in the context of the overall statutory scheme, as well as a review of the legislative history, clearly shows, however, that the throwing or expelling of bodily fluids must be the direct means of contact with a corrections staff member in order to qualify as conduct prohibited by RSA 642:9, II. Accordingly, I would affirm the decision of the superior court.

Statutory interpretation is a question of law that we review *de novo*. *State v. Kousounadis*, 159 N.H. 413, 423 (2009). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *State v. Lamy*, 158 N.H. 511, 515 (2009). We begin by examining the language of the statute, and, if possible, ascribe the plain and ordinary meaning to the words used. *Kousounadis*, 159 N.H. at 423. We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. *State v. Jennings*, 159 N.H. 1, 3 (2009). We will interpret a statute in the context of the overall statutory scheme and not in

isolation. *Id.* If a statute is ambiguous, however, we consider legislative history to aid our analysis. *Lamy,* 158 N.H. at 515. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* Finally, we construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *See* RSA 625:3 (2007).

The first step is to examine the language of the statute and ascribe the plain and ordinary meaning to the words used. RSA 642:9, II provides that:

> An inmate is guilty of aggravated assault on a corrections staff member when, with intent to harass, threaten, or alarm a person whom the inmate knows or reasonably should know to be an employee of such facility, or an employee of the department of corrections, or an employee of any law enforcement agency, the inmate causes or attempts to cause such employee to come in contact with blood, seminal fluid, urine, or feces by throwing or expelling such fluid or material.

Regardless of the definitions given to the words of the statute, the plain meaning of RSA 642:9, II does not readily resolve the issue of whether throwing or expelling bodily fluids must be the direct means of the contact or attempted contact, or if it can be the indirect means. On one hand, the statute does not expressly require that the inmate throw or expel the bodily substance directly at an employee who is physically present. In other words, it does not read "by throwing or expelling such fluid or material [at an employee]." *Cf., e.g.,* Ky. Rev. Stat. Ann. § 508.025(1)(b) (LexisNexis 2008) ("throws or causes feces, or urine, or other bodily fluid to be thrown upon an employee"); S.C. Code Ann. § 24-13-470(A) (2007) ("attempts to throw or throws body fluids . . . on an employee of a . . . correctional facility").

On the other hand, had the legislature intended for the criminal conduct to include indirect means contrived by inmates for causing or attempting to cause the contact, it is peculiar that the statute would identify "throwing" or "expelling" as the specific methods of causing or attempting to cause the contact, thereby excluding other possible indirect methods such as smearing on the walls. The legislature could have simply placed a period after the word "feces," so that the statute would read: "the inmate causes or attempts to cause such employee to come in contact with blood, seminal fluid, urine, or feces." *Cf. People v. Polanco,* 770 N.Y.S.2d 167, 169 (App. Div. 2003) (inmate's act of mailing an envelope containing bodily fluid did not fall within prescription of aggravated harassment statute because expulsion of the fluid was not the means of causing contact with that fluid). Thus, the addition of the words "throwing or expelling" creates an ambiguity as to what other acts, direct or indirect, are included in the statute.

While the plain language does not resolve this ambiguity, once the statute is examined in the overall statutory context, both as to the specific "Assaults by Prisoners" statute and, more generally, in the context of all the assault statutes, it becomes clear that the legislature intended to prohibit only direct contact or attempted direct contact caused by the throwing or expelling of bodily fluids. RSA 642:9 is titled "Assaults by Prisoners" and makes numerous references to the assault statutes found in RSA chapter 631 (2007). RSA 642:9, II specifically refers to the prohibited conduct as an "aggravated assault." Section IV of the statute delineates four different offenses as felonies: (1) aggravated assault as defined in section II of the statute, which is the subject of this appeal; (2) simple assault; (3) first degree assault; and (4) second degree assault. Simple assault requires bodily injury or unprivileged physical contact to another, *see* RSA 631:2-a, while first and second degree assault generally require serious bodily injury to another, *see* RSA 631:1, :2. The serious bodily injury and bodily injury elements in the other three variants of offenses in section IV strongly suggest that the most logical interpretation of the statute is that an offense under section II requires some direct physical contact. Merely alleging that a defendant caused a corrections employee to clean up the bodily fluids is insufficient to meet the elements under the statute. To interpret the statute any other way would be inconsistent with the rest of the section. *See Jennings*, 159 N.H. at 3.

Examining the assault statutes as a whole leads to the same conclusion. The conduct prohibited under the assault statutes generally involves actual bodily injury or physical contact to another. *See, e.g.*, RSA 631:1 (making it a class A felony to "[p]urposely cause[] serious bodily injury to another"); RSA 631:2 (class B felony to "[k]nowingly or recklessly cause[] serious bodily injury to another"); RSA 631:2-a (simple assault to "[p]urposely or knowingly cause[] bodily injury or unprivileged physical contact to another"). Any prisoner who commits an assault under RSA chapter 631 would be guilty of an offense under RSA 642:9. Thus, the statutory context here is that assault statutes generally require direct physical contact or direct contact that results in bodily injury. To effectuate the overall statutory scheme of the assault statutes, section II of the statute must be interpreted as requiring some direct physical contact.

Even if the overall context of the statutory scheme did not resolve the issue in this case, a review of the legislative history shows definitively that the legislature intended the statute to prohibit direct contact with bodily fluids thrown or expelled by prisoners. During a House committee hearing, testimony described several specific instances of inmate misconduct that involved a bodily substance being thrown or expelled directly at or on a corrections employee. For example, testimony included instances in which

inmates threw feces or urine in the face of a corrections employee, spat on an employee, and sprayed bodily fluids onto an employee. HOUSE CRIMI-NAL JUSTICE AND PUB. SAFETY COMM. MINUTES, H.B. 1382 (Feb. 2, 2000) (reprinted in State's Appendix at 32-34). Subsequently, when the prime sponsor of the House Bill testified before the Senate Committee on Executive Departments & Administration, he stated:

> The gist of the bill is to penalize an inmate who throws feces, blood, seminal fluid, and urine at a corrections officer. . . . Actually what it does is it just makes it a crime for someone to intentionally *through [sic] something at* a corrections officer thereby exposing him to some severe disease and so forth.

SENATE COMM. ON EXECUTIVE DEP'TS & ADMIN., H'RG ON H.B. 1382 (April 18, 2000) (statement of Rep. William V. Knowles) (reprinted in State's Appendix at 39-44) (emphasis added). Other testimony before the Senate committee also suggests that the bill was expected to target conduct of inmates who threw or expelled bodily material directly at or on corrections staff. *Id.* Understandably, proponents of the bill were concerned that such inmate conduct exposed corrections employees to disease, humiliation, and the anxiety that employees incur while awaiting test results to learn whether they have contracted a disease such as hepatitis. *Id.*; HOUSE CRIMINAL JUSTICE AND PUB. SAFETY COMM. MINUTES, *supra.*

In light of this legislative history, and after considering the statute in the context of the entire statutory scheme, I agree with the trial court that to be guilty of aggravated assault, the throwing or expelling of the bodily substance must have been the direct means of causing the contact or attempted contact. Here, the indictments against the defendant all allege that, "with the intent to harass a person he [knew] to be an employee of the Department of Corrections, [the defendant] purposely caused or attempted to cause such employee to come into contact" with feces or urine by throwing or expelling such material onto the floor, "thereby causing [the correctional officer] to clean it up." Because the indictments allege the throwing or expelling of the bodily substance as an indirect means of contact or attempted contact by "causing [the employee] to clean it up," rather than, for example, alleging that the defendant threw or expelled the substance at or on the employee, the trial court correctly dismissed the indictments. I would underscore the trial court's comment that the alleged conduct, if true, is reprehensible. However, it does not amount to felony aggravated assault under RSA 642:9, II.

Accordingly, I respectfully dissent.

CONBOY, J., joins in the dissent.