Rockingham
No. 2004-380

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER LOTT

Argued: March 23, 2005
Opinion Issued: July 15, 2005

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* assistant attorney general, on the brief and orally), for the State.

*Richard Monteith,* of Londonderry, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Christopher Lott, was convicted of one class B felony count of using computer services in a manner prohibited by the law. *See* RSA 649-B:4 (Supp. 2004). The defendant appeals an order of the Superior Court (*T. Nadeau,* J.) denying his motion to suppress evidence that he contends had been obtained by the State in violation of RSA 570-A:2 (2001) (amended 2002, 2003, 2004), which prohibits wiretapping and eavesdropping. We affirm.

On May 13, 2002, Detective Frank Warchol signed on to "Yahoo! Messenger" (Yahoo! IM), posing as a fourteen-year-old girl with the screen name "Kimmiesue87." Warchol entered an "internet chat room" (chat room) and quickly received a private instant message from the defendant, who was using the screen name "Chris8in2002875." The defendant directed the conversation toward sexual acts, sent a "web-cam" photo of himself and solicited "Kimmiesue87" for sex. The defendant then arranged to meet "Kimmiesue87" at the State Liquor Store in Portsmouth. The following day the defendant arrived at the agreed upon location and

was arrested. The defendant indicates in his brief, as did the State at oral argument, that Warchol took two actions regarding the instant message conversation: (1) he engaged in an instant message conversation with the defendant, and later copied the history from the chat window on his computer screen and pasted it into an electronic document; and (2) he enabled a message archiving feature that automatically creates a record of the instant message conversation, which he later saved as an electronic document.

The defendant filed a motion to suppress the recorded evidence of the instant message conversation, arguing that the police had obtained the evidence in violation of RSA 570-A:2. The trial court denied his motion and allowed the State to use the documents.

The defendant and Warchol met in a chat room, and then entered into private conversation through the use of instant message communications. Though the use of chat rooms and instant messaging is now a relatively common form of communication, we will first describe these terms to avoid any confusion.

> In addition to allowing users to view text and images on web pages, the Internet allows users to converse with one another in real time. One method of doing so is through a "chat room." A chat room is a meeting place for Internet users. Users typically log into a chat room under a pseudonym or "screen name." Chat rooms are usually organized around topics of interest to users including, for example, college football, the music of Bob Dylan, or gardening. Users can chat in the chat room itself, an open forum where all other users can read the messages as they are typed, or users can meet in the chat room and then chat privately.

*United States v. Johnson*, 376 F.3d 689, 691 n.1 (7th Cir. 2004).

> Instant messaging is a form of computer communication in which individuals hold an online conversation via the internet. When a person sends an instant message to another person online, that message is transmitted instantaneously to the recipient, opening a [chat] window that allows both parties to see the message and to respond immediately. The [chat] window, while open, contains a complete history of all messages sent and received during the online conversation.

*State v. Bouse*, 150 S.W.3d 326, 329 n.2 (Mo. Ct. App. 2004).

On appeal, the defendant argues that the trial court erred when it denied his motion to suppress the recorded evidence of the instant

message conversation. When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo. State v. Velez*, 150 N.H. 589, 592 (2004). As the facts of this case are undisputed, we review the trial court's decision only for errors of law. *Appeal of N.H. Youth Dev. Ctr.*, 152 N.H. 86, 87 (2005).

RSA 570-A:2 prohibits the interception of telecommunications or oral communications, with several exceptions, including that the interception of a communication shall not be unlawful if it was intercepted with "the consent of all parties to the communication . . . ." RSA 570-A:2, I. Both the State and the defendant agree that the instant message communications at issue qualify as telecommunications. *See* RSA 570-A:1, I (2001). Thus, the only issues are whether Warchol's actions constitute an interception of the defendant's communications, and, if so, whether that interception occurred without the defendant's consent. If we answer both questions in the affirmative, then the recorded evidence of the communications is inadmissible under RSA 570-A:6 (2001). If we answer either question in the negative, however, then the recorded evidence is admissible. *See* RSA 570-A:6.

As Warchol engaged in two distinct actions, as described above, we will address each action separately. We first address whether Warchol intercepted a communication in violation of RSA chapter 570-A when he engaged in an instant message conversation with the defendant, and later copied the history from the chat window on his computer screen and pasted it into an electronic document.

"Intercept" is defined by statute as "the aural or other acquisition of, or the recording of, the contents of any telecommunication or oral communication through the use of any electronic, mechanical, or other device." RSA 570-A:1, III (2001). An electronic, mechanical, or other device is defined by statute as "any device or apparatus which can be used to intercept a telecommunication . . . ." RSA 570-A:1, IV (2001).

■ When the defendant sent an instant message to Warchol, that instant message was immediately received by Warchol, recorded by the Yahoo! IM program and/or Warchol's computer, and displayed in both the defendant's and Warchol's chat windows. As Warchol recorded the defendant's telecommunication with his computer and/or computer instant messaging program, electronic devices that can be used to record a conversation, his action fits perfectly within the statutory definition of "intercept."

The State argues, and the trial court found, that neither the computer nor the computer instant messaging program should qualify as an electronic device that can be used to intercept a communication, because each device is a medium for the communication. We disagree.

We recognize that the statutory definitions of "intercept" and "electronic, mechanical, or other device" have not changed in any meaningful way since 1988, when internet communications technology was in a nascent stage of development. Although the prevalence of internet communications technology has expanded rapidly since that time, and although the statute might appear outdated, when, as here, the language of the statute is plain and unambiguous, we are bound by that language, and do not add words that the lawmakers have not seen fit to add, nor consider what the legislature might have said were it presented with the facts before us in this case. *See State v. Hofland*, 151 N.H. 322, 324 (2004).

We agree with the Washington Supreme Court in *State v. Townsend*, a case involving the interpretation of a similar statute, that "[w]hile one could certainly mount a cogent argument for the proposition that the privacy act should not apply when the recording of the transmission is done in a non-surreptitious way on a device that is also used for communication, the plain language of the statute covers such recording." *State v. Townsend*, 57 P.3d 255, 260 n.2 (Wash. 2002). RSA 570-A:1, IV states that an intercept is the recording of a communication by *any* electronic device that *can* be used for such a purpose. While either a computer or a computer instant messaging program is capable of being a medium of conversation, each is also simultaneously capable of being used as a recording device. We note, as did the court in *Townsend*, "that the legislature may ... wish to consider amending the statute in light of developments in technology." *Id.* As communications technology continues to develop, RSA chapter 570-A may become more difficult for law enforcement officers to comprehend if its provisions do not encompass current forms of communication.

Although we conclude that Warchol intercepted the defendant's communications, we conclude that the defendant, as a matter of law, consented to the recording of his communications. We dealt with a similar situation in *State v. Lamontagne*, 136 N.H. 575 (1992). In *Lamontagne*, police officers were searching a private home pursuant to a warrant. A telephone rang and an officer answered the phone without identifying himself. When the caller asked if "Reuben" was speaking, the officer, though not "Reuben," answered affirmatively and arranged for the caller to come to the house to purchase marijuana. After the caller was arrested and charged, he argued that the court should suppress the telephone

conversation because it was intercepted in violation of RSA chapter 570-A. *Lamontagne*, 136 N.H. at 576-77.

We determined that there was no interception prohibited by RSA chapter 570-A because the caller consented to the officer's aural acquisition of the communication. *Id.* at 578. We pointed out that the officer heard the caller speak because they were both parties to the communication, and that the caller dialed a specific phone number, heard the phone being picked up on the other end of the line, wanted the person on the other end of the line to hear him when he spoke, and continued to speak with the person who in actuality was a police officer. *Id.* Similarly, in this case, the defendant and Warchol were parties to the communication, the defendant chose to communicate with Warchol, the defendant saw that Warchol received the messages, he wanted Warchol to be able to read the communications, and he continued the conversation.

The difference between the present case and *Lamontagne* is that in the present case the conversation was *recorded* by the Yahoo! IM program. In *Lamontagne*, we stated, in dicta, that "our decision may well have been different if there had been any *unauthorized* ... recording of the communications between the [defendant] and the [officer]." *Id.* at 579 (emphasis added). We relied upon the fact that recording, "unlike the aural acquisition of communications by the recipient of a telephone call, [is] *unknown* to the caller unless the recipient of the telephone call informs the caller that the call is being ... recorded." *Id.* (emphasis added). Unlike persons using a telephone, however, persons using an instant messaging program are aware that their conversations are being recorded. As the trial court aptly stated, "[It] is an inherent function of this form of communication for the words to appear and remain on the computer screen." Unlike the hypothetical situation we posed in *Lamontagne*, the defendant in this case knew that the instant message communications were being recorded by Warchol because, as we noted above:

> When a person sends an instant message to another person online, that message is transmitted instantaneously to the recipient, opening a [chat] window that allows *both* parties to see the message and to respond immediately. The [chat] window, while open, contains a *complete* history of all messages sent and received during the online conversation.

*Bouse*, 150 S.W.3d at 329 n.2 (emphasis added).

A similar situation arose in *Townsend*, discussed above, involving electronic mail (e-mail) communications. *Townsend*, 57 P.3d at 260. In that case a detective posed as a fictitious thirteen-year-old girl. *Id.* at 257. The defendant sent e-mail communications to the detective containing

overtures for a meeting with the girl and indications that he wanted to "have fun" with her. *Id.* The e-mails were stored automatically on the detective's computer, enabling him to read them at his leisure and print them out for later use as evidence. *Id.* After he was charged, the defendant argued that the court must suppress the evidence because the recording of the e-mail violated the Washington Privacy Act. *Id.* at 258. The court found that although the e-mail communications were subject to the privacy act, the recording of the e-mails was not unlawful because the defendant had consented, by implication, to the recordings. *Id.* at 260-61. The court agreed with the lower appellate court's reasoning:

> A person sends an e-mail message with the expectation that it will be read and perhaps printed by another person. To be available for reading or printing, the message first must be recorded on another computer's memory. Like a person who leaves a message on a telephone answering machine, a person who sends an e-mail message anticipates that it will be recorded. That person thus implicitly consents to having the message recorded on the addressee's computer.

*Id.* at 260.

Like an e-mail message and a message left on an answering machine, the recording of the instant message is necessary for the intended recipient of that message to read the message. *See Com. v. Proetto*, 771 A.2d 823, 830 (Pa. Sup. Ct. 2001) ("Sending an e-mail or chat-room communication is analogous to leaving a message on an answering machine."). As we noted above, "the [chat] window, while open, contains a complete history of all messages sent and received during the online conversation." *Bouse*, 150 S.W.3d at 329 n.2.

Of course, once that instant message has been recorded on the computer's memory and displayed on the screen, it can, for example, thereafter be saved to the hard drive, copied and pasted to an electronic document, or printed from the instant messaging program or the screen itself. *See id.* ("The sender knows that by the very nature of sending the communication a record of the communication, including the substance of the communication, is made and can be downloaded, printed [or] saved . . . ."). These options are built into the instant messaging program itself and the computer in general. As the trial court stated, "[It] should come as no surprise to the defendant that the [history in the chat window] on Detective Warchol's computer screen was saved and printed." It takes no extraordinary effort to preserve this type of instant message conversation for later use, and there is no reason to believe that a person who receives this type of instant message containing evidence of criminal activities may

not choose to preserve that communication as evidence and turn it over to the police.

■ Indeed, instant messaging proves to be a double-edged sword for a person wishing to commit the crime of soliciting children for sex over the internet. While it provides immediate access to victims who might not otherwise be within the perpetrator's reach, it also provides a paper trail of evidence to prosecute that person should the intended recipient of the instant message communication choose to turn the evidence over to the police. We conclude that, although Warchol intercepted a communication, he did not violate RSA chapter 570-A because the defendant implicitly consented to the recording of the communication. Thus, the trial court properly allowed the State to introduce this recorded evidence.

Warchol not only obtained recorded evidence of the instant message conversation by engaging in an instant message conversation and copying and pasting the history from the chat window into an electronic document, but he also obtained recorded evidence by enabling the Yahoo! IM message archiving feature and saving the record to an electronic document. Having determined that Warchol's first method did not violate RSA chapter 570-A, we now turn to his second method.

We first note that it is unclear from the record and the parties' briefs exactly how the message archive feature of Yahoo! IM works, and whether enabling that feature would constitute its own interception of a communication. Further, it is unclear exactly what the State introduced as recorded evidence of the communication; i.e., whether the State introduced two separate records that Warchol obtained through the two above-described methods, or whether the State introduced only a single record of the communication that Warchol happened to obtain through those two methods. We need not, however, remand this case for further findings.

If the State sought to introduce only one piece of evidence obtained through two methods, we need not address whether Warchol obtained the evidence in violation of RSA chapter 570-A by employing the second method, because we have already concluded that he obtained the recorded evidence legally by employing the first method. In State v. MacMillan, we held that even if a detective illegally intercepted a communication by recording it, he could still testify to his personal knowledge of that communication that he had obtained by legal means. State v. MacMillan, 152 N.H. 67, 72-73 (2005). Similarly, we conclude here that even if Warchol illegally intercepted the instant message communication by enabling the Yahoo! IM message archiving feature, the State could still properly introduce evidence Warchol obtained through the first method, which we have determined that Warchol obtained lawfully.

If, on the other hand, the State introduced two separate recordings of the instant message conversation, we need not address whether the court properly allowed the State to introduce the recording obtained by the second method because the trial court properly allowed the State to introduce evidence of the recording that Warchol obtained when he copied and pasted the history from the chat window into an electronic document. Even if the recording obtained by the second method was admitted in error, that error would be harmless beyond a reasonable doubt as the evidence, identical in form and content to the lawfully-obtained recording, is merely cumulative. *State v. Cossette*, 151 N.H. 355, 357 (2004).

We note that in his brief the defendant references the Fourth, Fifth, and Fourteenth Amendments of the Federal Constitution, and Part One, Articles Fifteen and Nineteen of the New Hampshire Constitution. Because the defendant has not developed his constitutional arguments, we decline to address them. *See State v. Chick*, 141 N.H. 503, 504 (1996) (passing reference to constitutional claim renders argument waived); *Keenan v. Fearon*, 130 N.H. 494, 499 (1988) ("off-hand invocations" of constitutional rights supported by neither argument nor authority warrant no extended consideration).

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.