Hillsborough-southern judicial district
No. 2009-559

# THE STATE OF NEW HAMPSHIRE

v.

# JOHN MOSCONE

Argued: September 8, 2010
Opinion Issued: January 13, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Jeffco & Starbranch*, of Portsmouth (*Harry N. Starbranch, Jr.* on the brief and orally), for the defendant.

DALIANIS, C.J. The defendant, John Moscone, was convicted of two class B felony counts of using computer services in a manner prohibited by law. *See* RSA 649-B:4 (2007) (amended 2008). On appeal, he argues that the Superior Court (*Groff*, J.) erred by: (1) instructing the jury on the wrong mental state; (2) failing to dismiss the indictments against him; (3) admitting evidence of his identity obtained after he was unlawfully arrested; (4) finding that the State presented sufficient evidence of identity for the case to go to the jury; and (5) admitting the transcript of internet chat room conversations in violation of RSA 570-A:2 (Supp. 2007). We reverse and remand.

The record reveals the following facts. From April 30, 2008, through June 11, 2008, Detective Michael Niven of the Hudson Police Department posed as a fourteen-year-old girl in a Yahoo! internet chat room using the screen name "jordanh_94." The defendant, using the screen name "pool_playa03867," initially contacted "jordanh_94" on April 30, 2008, through a private instant message. After learning that "jordanh_94" was fourteen years old, the defendant engaged in an online conversation with "jordanh_94" that was sexual in nature. During the conversation, the defendant told "jordanh_94" he was forty-nine years old and sent her a picture of himself.

The defendant and "jordanh_94" continued to communicate through instant messages over the next several weeks. The conversations continued to be sexual in nature with the defendant suggesting that "jordanh_94" meet him for sex. "Jordanh_94" agreed to meet the defendant for sex at approximately 1:00 p.m. on June 11, 2008, at Merrill Park in Hudson. The defendant told "jordanh_94" that he would be driving a black truck.

At approximately 12:30 p.m. on June 11, Niven and Sergeant Charles Dyac were parked in an unmarked police car on Fulton Street near Merrill Park. Just before 1:00 p.m., the officers saw a silver sedan drive slowly down Fulton Street. The car was about fifty feet from the officers when it pulled off the road and stopped for a couple of minutes. The car then made a U-turn and started to leave the area. As the car made the U-turn, the officers were able to see the driver's face. The driver matched the picture sent to "jordanh_94." The officers stopped the car, arrested the driver, and obtained his license, which identified him as John Moscone from Rochester.

The officers had suspected that "pool_playa03867" might be from Rochester, in part, because of a prior on-line conversation between "pool_playa03867 and Niven." On August 25, 2006, Niven posed as a fourteen-year-old girl, "amberl4nh," and engaged in an on-line chat with "pool_playa03867." The conversation was sexual in nature, with "pool_playa03867" requesting that they meet for a ride on his motorcycle and engage in sexual acts. During this conversation, "pool_playa03867" told

"amber14nh" that he was from Rochester. "Pool_playa03867" and "amber14nh" talked about meeting at Merrill Park in Hudson the following week for sex, but no meeting ever took place.

The defendant was charged with two counts of violating RSA 649-B:4, I(a) by "knowingly utiliz[ing] a computer on-line Internet service known as Yahoo to attempt to seduce, solicit, lure or entice" persons with screen names "[j]ordanh_94" and "amber14nh," whom John Moscone believed to be "under the age of 16, to engage in sexual penetration."

The defendant first argues that the trial court erred in instructing the jury as to the mental state required for conviction. To convict the defendant under RSA 649-B:4, I(a), the State had to prove that he "knowingly utilize[d] a computer on-line service . . . to . . . attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit . . . [a]ny offense under RSA 632-A relative to sexual assault and related offenses." The defendant argues that because he is charged with attempting to seduce, solicit, lure or entice, the attempt statute, RSA 629:1 (2007), applies. Under the attempt statute, "[a] person is guilty of an attempt to commit a crime if, with a *purpose* that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime." RSA 629:1, I (emphasis added). Accordingly, the defendant submits that the trial court was required to give an attempt jury instruction that included the mental state of "purposely" and the affirmative defense of renunciation. The State asserts that the correct mental state is "knowingly" and that we should construe "attempt" in the generic sense of the word.

The interpretation of a statute is a question of law, which we review *de novo*. *State v. Kousounadis*, 159 N.H. 413, 423 (2009). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Thiel*, 160 N.H. 462, 465 (2010). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* Furthermore, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* Finally, we construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. *Id.*; *see* RSA 625:3 (2007).

The defendant contends that RSA 649-B:4, I(a), as charged in his indictments, requires proof of two mental states. He argues that "[w]hile it

is enough to act knowingly with respect to some of the material elements, [he] must have the purpose that the crime be committed against a child." We disagree.

■ "When the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." RSA 626:2 (2007). RSA 649-B:4, I(a), as charged, is comprised of four material elements: (1) the defendant must have utilized a computer on-line service, internet service, or local bulletin board; (2) in an attempt to seduce, solicit, lure, or entice; (3) a child or another person believed by the person to be a child; (4) for sexual penetration. The mental state of "knowingly" applies to all four elements unless a contrary purpose plainly appears. *See* RSA 626:2, I; RSA 649-B:4, I(a).

■ We begin with the language of RSA 649-B:4, I(a). *See Thiel*, 160 N.H. at 465. The statute does not incorporate the attempt statute nor reference its definition of attempt. Further, use of the word "attempt," in a criminal statute, does not automatically mandate that we apply RSA 629:1, I. *See Petition of State of N.H. (State v. Laporte)*, 157 N.H. 229, 231-32 (2008) (applying plain meaning of "solicitation" in criminal statute rather than statutory definition of "criminal solicitation"); *see also State v. Mendez*, 785 A.2d 945, 951 (N.J. Super. Ct. App. Div. 2001) ("[T]he use of the word 'attempts' in the definition of a substantive offense does not necessarily reflect a legislative intent to import the law of attempt, including the 'purposeful' culpability requirement, into that offense."), *aff'd*, 814 A.2d 1043 (N.J. 2002).

We have never expressly held that the inclusion of the word "attempt" in a criminal statute implicates the attempt statute. In *State v. Kilgus*, 125 N.H. 739, 743 (1984), the defendant was convicted of witness tampering pursuant to RSA 641:5, I(a) (2007), which states, "A person is guilty of a class B felony if . . . [b]elieving that an official proceeding . . . or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to . . . [t]estify or inform falsely . . . ." We concluded, without analysis, that the trial court used the proper *mens rea* when it instructed the jury that "the defendant had to act purposely when he attempted to get [a person] to give the police false information." *Kilgus*, 125 N.H. at 743. Since *Kilgus*, we have required a purposeful mental state for witness tampering convictions. *See State v. DiNapoli*, 149 N.H. 514, 516-17 (2003); *State v. Brewer*, 127 N.H. 799, 800 (1986). However, we have never explicitly incorporated the attempt statute, or its necessary element of taking a "substantial step" toward the commission of the crime.

■ Further, the purpose of RSA 649-B:4 would not be met by construing the statute to incorporate the attempt statute. RSA 649-B:4 was enacted as part of the "Computer Pornography and Child Exploitation Prevention Act of 1998." *State v. Jennings*, 159 N.H. 1, 5 (2009). The purpose of the Act was to "establish penalties for child pornography, exploitation, and abuse offenses committed by means of computer . . . and to prevent computer pornography and child exploitation." *Id.* (quotation, brackets and citation omitted). As we noted in *Jennings*, the legislative history "acknowledges the new technology presented by the computer, the expanse of possibilities presented by the internet, and the need for new and broader statutes to assist law enforcement in the protection of children from the types of dangers presented by the same." *Id.* Given that the purpose of RSA 649-B:4 is to aid police in their attempt to protect children from these types of online crimes and incorporating the attempt statute would only make their job more difficult because it would require the heightened mental state of "purposely," *see* RSA 629:1, I, we conclude that the defendant's reading of the statute would be contrary to the legislative purpose.

■ Finally, we consider the statute in the context of the overall statutory scheme. *See Thiel*, 160 N.H. at 465. "Since an attempted crime is by definition a crime not completed, the State could not plead, factually identify, and prove the elements of the intended offense as if it had been carried out." *State v. Munoz*, 157 N.H. 143, 147 (2008) (quotation omitted). In charging an attempt crime, the attempt statute is generally paired with another criminal statute, such as burglary, because the defendant has failed to complete the underlying crime. *See, e.g., id.* at 145, 147; *State v. Glanville*, 145 N.H. 631, 631 (2000). Here, the crime proscribed by the legislature is an attempt to seduce, solicit, lure, or entice a person believed to be a child under the age of sixteen. Thus, the crime is complete when the defendant uses the internet in an effort to solicit a child, or a person believed to be a child, to engage in sexual activity. It is the conduct of attempting or trying to seduce or solicit that the legislature is prohibiting. Because the crime in this case was complete when the defendant attempted or tried to solicit, it cannot be an attempted crime under RSA 629:1.

■ We recognize that the federal courts apply the criminal definition of attempt to the coercion and enticement statute, 18 U.S.C.A. § 2422(b) (Supp. 2010), which states,

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person

can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

This statute is, however, distinguishable from RSA 649-B:4, I(a). The federal statute does not prohibit conduct between the defendant and "another person believed by the [defendant] to be a child." *Compare* RSA 649-B:4, I(a) *with* 18 U.S.C.A. § 2422(b). Thus, under federal law, the attempt statute is applied whenever a defendant engages in the prohibited activity with a person he believes to be under the age of eighteen, but who is actually an undercover police officer. *See, e.g., United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005) (defendant charged with attempt because he could not have actually enticed a minor as his online chats were with undercover police officer). Unlike under our statute, the crime is not completed under 18 U.S.C.A. § 2422(b) when the defendant tries to entice an undercover police officer to engage in a sexual activity. Given the dissimilarities between the federal statute and RSA 649-B:4, I(a), we are not persuaded by the federal courts' application of the attempt statute.

█ Therefore, we conclude that the word "attempt" in RSA 649-B:4, I(a) does not incorporate the attempt statute, RSA 629:1, I, or the mental state of purposely. Accordingly, the mental state of knowingly applies to all of the material elements of RSA 649-B:4, I(a) because the word attempt is not a "contrary purpose plainly appear[ing]" in the statute. RSA 626:2, I.

█ The defendant next argues that RSA 649-B:4 is unconstitutionally vague and overbroad. Generally, we will not consider issues raised on appeal that were not presented in the trial court. *See State v. Panarello*, 157 N.H. 204, 207 (2008). The record before us does not reflect, and the defendant has not pointed to, any evidence that these constitutional arguments were raised before the trial court. It is the burden of the appealing party to provide this court with a record sufficient to decide the issues raised on appeal and to demonstrate that the appellant raised those issues before the trial court. *Thiel*, 160 N.H. at 464. Because the defendant has failed to meet his burden, we decline to address these arguments.

The defendant also argues that the trial court erred in dismissing the indictments for failing to allege "a purposeful mental state relative to 'attempt,'" which violated his rights under Part I, Article 15 of the New Hampshire Constitution. To the extent that he attempts to bring a constitutional challenge under our State Constitution, this issue has not been preserved. *See Panarello*, 157 N.H. at 207. To the extent that he raises a statutory interpretation issue arguing that RSA 649-B:4, I(a) requires a purposeful mental state, this has been addressed above.

Next, the defendant argues that the trial court erred by admitting evidence of his identity at trial. Before trial, the trial court determined that the defendant was illegally arrested and that any subsequent fruits of that arrest must be suppressed. At trial, Niven identified the defendant through his driver's license. Defense counsel objected to the identification because the license was obtained only after his illegal arrest. In doing so, defense counsel appeared to assert that whenever a person is illegally arrested, the police cannot testify as to who was arrested. The State submits that *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), precludes the identity of a defendant from being suppressed as a fruit of an unlawful arrest.

In *Lopez-Mendoza*, the United States Supreme Court reviewed two civil deportation proceedings that followed unlawful arrests. *Lopez-Mendoza*, 468 U.S. at 1034. In the first case, respondent Lopez-Mendoza argued that the immigration court did not have personal jurisdiction over him because his arrest was unlawful. *See id.* at 1035, 1040. The Court held that the immigration court retained jurisdiction over the defendant because "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *Id.* at 1040 (quotation and brackets omitted). In this context the Court noted that "the 'body' or identity of a defendant or a respondent in a criminal or civil proceeding is never suppressible as a fruit of an illegal arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.* at 1039-40. In the second case, respondent Sandoval-Sanchez argued that his incriminating statements were the fruit of an illegal arrest and should be suppressed. *Id.* at 1037, 1040. The Court considered whether the exclusionary rule extended to non-criminal, civil deportation proceedings, *id.* at 1040-41, and concluded that it did not apply. *Id.* at 1050.

■ Reading the Supreme Court's resolution of these two deportation proceedings together leads us to conclude that the Court's statement that the identity of a defendant is never suppressible as the fruit of an illegal arrest is limited solely to jurisdiction. *See United States v. Olivares-Rangel*, 458 F.3d 1104, 1112 (10th Cir. 2006). If the statement, which was mentioned in connection with Lopez-Mendoza's jurisdictional challenge, also applied to Sandoval-Sanchez's evidentiary challenge, there would have been no need for the Court to dispose of Sandoval-Sanchez's case separately. As the Tenth Circuit aptly noted, "the 'identity' language in *Lopez-Mendoza* refers only to jurisdiction over a defendant and does not apply to evidentiary issues pertaining to the admissibility of evidence obtained as a result of an illegal arrest and challenged in a criminal proceeding." *Id.*; *see also State v. Greene*, 120 N.H. 663, 664 (1980) ("An illegal arrest, without more, is neither a bar to subsequent prosecution nor a defense to a valid conviction.

Whether the arrest was legal or not is immaterial unless evidence is obtained as the result of the allegedly illegal detention." (citation omitted)). Thus, we disagree with the State's interpretation of *Lopez-Mendoza* and are persuaded by the majority of jurisdictions that interpret *Lopez-Mendoza* more narrowly. *See United States v. Farias-Gonzalez*, 556 F.3d 1181, 1185-86 (11th Cir.); *cert. denied*, 130 S. Ct. 74 (2009); *United States v. Oscar-Torres*, 507 F.3d 224, 230 (4th Cir. 2007); *Olivares-Rangel*, 458 F.3d at 1112; *United States v. Guevara-Martinez*, 262 F.3d 751, 754 (8th Cir. 2001).

■ We next consider whether evidence of the defendant's identity should have been suppressed as the fruit of his unlawful arrest. The defendant objects to Niven's testimony identifying him through his driver's license because his license was obtained after he was illegally arrested. "Evidence obtained in violation of a defendant's rights under Part I, Article 19 is inadmissible under the exclusionary rule." *State v. De La Cruz*, 158 N.H. 564, 566 (2009). The State does not challenge the trial court's order on the motion to suppress nor argue that any exception to the exclusionary rule applies in this case. Therefore, the defendant's driver's license, which was obtained after he was illegally arrested, must be excluded. It necessarily follows that any testimony about the driver's license must also be excluded. Because the trial court erred in admitting testimony of the defendant's identity based upon the illegally seized driver's license, and the State does not argue that this was a harmless error, we reverse and remand. We note that the officers may identify the defendant in court, if they are able to do so, based upon their observations before the illegal arrest.

■ The defendant next asserts that the trial court erred in denying his motion for a directed verdict based upon insufficient evidence of his identity. He argues that "[t]he identification at the scene is the only evidence of identity" and without it "there is no evidence of the [d]efendant's identity." The defendant's argument assumes that in reviewing the sufficiency of the evidence, we will disregard evidence of his identification at the scene. This assumption is mistaken. *See State v. Langill*, 161 N.H. 218, 228 (2010) (in reviewing sufficiency claim, we consider all evidence, including evidence erroneously admitted). Because the defendant's argument is based upon an erroneous premise, we reject it.

■ The defendant next argues that publishing the transcript of the internet chat to the jury violated RSA 570-A:2, which prohibits wiretapping and eavesdropping. RSA 570-A:2 prohibits the interception of telecommunications or oral communications; however, the interception of a communication shall not be unlawful if it was intercepted with "the consent of all

parties to the communication." RSA 570-A:2, I; *see State v. Lott*, 152 N.H. 436, 438 (2005). We addressed the consent exception in *Lott* and held that, due to the nature of instant messaging technology, the defendant consented to the recording of his instant message communications with a police officer posing as a fourteen-year-old girl. *Lott*, 152 N.H. at 439-40. We concluded that because the defendant consented to the recording, the State could admit the recording into evidence at trial. *Id.* at 442. Similarly, here, the defendant engaged in online instant messaging and knew that the messages were capable of being recorded. The fact that the defendant told "jordanh_94" to "delete [her] archives" after their online conversation does not vitiate his consent because his consent is implicit in his use of instant messaging technology. *See id.* at 440-41. Accordingly, the trial court did not violate RSA 570-A:2 when it admitted and published the transcripts to the jury.

*Reversed and remanded.*

DUGGAN, HICKS and CONBOY, JJ., concurred.